(No. 60686.—

ALLAN BACHEWICZ *et al.*, Appellants, v. AMERI-CAN NATIONAL BANK AND TRUST COMPANY (The Statesman Limited Partnership, Appellee).

*Opinion filed February 6, 1986.—Rehearing denied April 1, 1986.*

Frederic J. Artwick, Prentice H. Marshall, Jr., and Susan R. Levin, of Sidley & Austin, of Chicago, for appellants.

Anthony J. Pauletto, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, the plaintiffs, B&B Investment Company and its

individual partners, were awarded a total of $632,063.80 in damages, plus interest, in their action for breach of a contract to convey real estate. The appellate court agreed that a valid contract for the sale of the property had been formed but struck the greater part of the damages award as unsupported by the evidence. (126 Ill. App. 3d 298.) We allowed the plaintiffs' petition for leave to appeal (94 Ill. 2d R. 315(a)), and that brought before us as well (see 87 Ill. 2d R. 318(a)) the argument by one of the owners that no binding contract for sale ever came into existence.

The property in question is a 21-story, 90-unit residential building located at 5601 North Sheridan Road in Chicago. The Statesman Limited Partnership (Statesman) acquired the beneficial interest in the property in 1973 and later that year assigned half the interest to another limited partnership, 5601 North Sheridan Associates (Associates). Following that, Statesman and Associates operated the building as a joint venture; legal title to the property remained in the American National Bank, as trustee of an Illinois land trust. In 1977, after failed negotiations among B&B Investment Company (B&B), Associates, and Statesman, B&B submitted to Associates an offer to buy the property, and Associates accepted the offer, subject to its acceptance by Statesman. Associates purported to invoke a deadlock provision in the owners' joint venture agreement; under the provision, Statesman's consent to the sale could result if it did not elect instead to buy out Associates' interest in the property. Statesman did nothing in the time allowed, and B&B then went ahead with its arrangements to purchase the property. Denying that a valid contract had arisen, Statesman later acquired Associates' interest in the property and eventually sold the building to a third party for more than B&B had offered.

The plaintiffs originally brought an action in October

1977 to compel specific performance of the purported contract, and the complaint was dismissed on Statesman's motion. The appellate court reversed, holding that the deadlock provision in the joint venture agreement could have provided Associates with the necessary authority to enter into a binding contract for the sale of the entire property. (75 Ill. App. 3d 252.) On remand, the circuit judge found that a valid, enforceable contract had arisen and awarded the plaintiffs damages of $599,767 as the difference between the contract price and the fair market value of the property at the time of the breach. The court also awarded the plaintiffs incidental damages totaling $32,296.80 and prejudgment interest. Associates had been dismissed as a defendant in B&B's suit. In a related action that had been consolidated for trial, the court awarded a real estate brokerage commission of $95,000. On appeal, the appellate court affirmed the holding that a valid, enforceable contract had come into existence but, over a dissent, reversed the major part of the damages award as unsupported by the evidence. (126 Ill. App. 3d 298.) The appellate court let stand the award of incidental damages. The court also affirmed the award of the brokerage commission; that action is not a part of this appeal.

Statesman argues that it never became bound by an agreement to convey the property to B&B. Determinative of this question is the parties' joint-venture agreement. Paragraph 9 of the agreement contained two provisions concerning the transfer of interests in the property. The first provision gave a preemptive right, or right of first refusal, in the event that one of the joint venturers received an offer for its interest alone; the provision allowed the other partnership 30 days in which to agree to purchase that interest on the same terms offered by the outsider. Paragraph 9 of the joint-venture agreement also contained a deadlock provision, of rele-

vance here. It provided:

> "In the event an offer is received for the purchase of the entire apartment building, and the parties cannot agree whether to accept said offer, the party who desires to accept said offer shall so advise the other party in writing. Thereafter, said other party shall have thirty (30) days within which to either consent to the sale as proposed by such third party or may, within said thirty (30) day period, elect in writing to purchase the interest of the party desiring to sell for an amount equal to the proportionate share of the offer which would have been received by the party desiring to sell its interest in the apartment building. Failure to make an election within the thirty (30) day period shall be deemed to be a consent to such proposed sale, and the parties shall thereafter proceed to consummate such sale, and both parties agree to execute all necessary documents to complete such sale."

A co-owner of real estate generally is not bound by another owner's agreement to convey the entire property (*Dineff v. Wernecke* (1963), 27 Ill. 2d 476; *Madia v. Collins* (1951), 408 Ill. 358), though he may be bound if the other, acting as an agent, has the necessary authority (*Penner v. Frisch* (1978), 57 Ill. App. 3d 947). To satisfy the Statute of Frauds, the agent's authority would have to be in a writing signed by the party to be charged. (Ill. Rev. Stat. 1983, ch. 59, par. 2.) Partnership principles govern joint ventures (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427), for a joint venture essentially is a partnership carried on for a single enterprise (*Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313).

In finding the existence of an enforceable contract for the conveyance of the property, the appellate court concluded that Associates, as an agent, was acting in furtherance of the joint venture's business in conditionally accepting B&B's offer to purchase the entire property and that Statesman's acceptance of the offer was ef-

fected by operation of the deadlock provision in the joint-venture agreement. A review of the evidence supports Statesman's argument, however, that it did not become bound under the deadlock provision by Associates' purported agreement to sell the property to B&B.

Late in 1976 Allan Bachewicz, a general partner of plaintiff B&B, learned that the building in question was for sale. He initially submitted an offer to purchase the property in February 1977, proposing to pay a total of $700,000, in a combination of cash and a promissory note, and to assume liability under the existing mortgage, which at that time stood at about $1.1 million. The offer was considered and rejected later that month. At that time Bachewicz met with Milton Schraiber or David Ziegler, who were the two general partners of the Statesman group, and with William Wilkow, who was one of the general partners of Associates; the other general partners of Associates were William Wilkow's father, Mendel, and an uncle, Joseph. Also attending the meeting in February were Richard Marmor, an employee of William Wilkow, and two real estate brokers involved in the sale. Associates found B&B's offer acceptable but Statesman did not, preferring that more cash be paid at closing. An alternative proposal grew out of this meeting, involving the trade of another piece of property, but it too proved unsuccessful.

William Wilkow was eager to sell Associates' interest in the property, and late in May 1977 he sent to the various parties a memorandum expressing some frustration at their inability to reach an agreement and inviting them to meet on a specific date to discuss the matter further. It appears from the record that a meeting was held early in June 1977, though not on the date that Wilkow had suggested. Bachewicz, William Wilkow, and Schraiber or Ziegler attended. Bachewicz decided to make an all-cash offer—all the money would be paid at

closing—and he believed that there was general agreement to this plan. Following the meeting, Bachewicz submitted to the parties a draft of a contract, dated June 10, 1977. This was never adopted. Bachewicz was told that the Statesman group again was dissatisfied with the amount of cash that it would be receiving at closing. Finally, a real estate agent learned that William Wilkow's employee, Richard Marmor, had discovered a joint venture agreement that might prove to be helpful. Bachewicz then submitted to Associates a written offer, with a cover date of June 29, 1977, for the purchase of the entire property. It was conditionally accepted by William Wilkow's father, Mendel Wilkow. In a letter to B&B dated July 6, 1977, Mendel Wilkow wrote:

> "The undersigned as 50% beneficial owner of the above property herewith accepts your offer to purchase the above property dated June 29, 1977, a copy of which is attached hereto as Exhibit A (the 'Offer'), subject to a condition precedent: the acceptance of the Offer by The Statesman, an Illinois Limited Partnership, being the remaining 50% beneficial owner of the above property, which acceptance may be express or implied and within the time therefor allowed, pursuant to paragraph 9 of that certain Agreement between the undersigned and The Statesman, dated in 1972, a copy of which is attached hereto as exhibit B.
>
> Our acceptance shall be deemed effective coincident with time of acceptance by The Statesman as aforesaid."

Though Bachewicz had been told, before he submitted the offer, that the joint-venture agreement might be helpful, he had not previously seen it. On the same day that Mendel Wilkow sent to B&B notice of Associates' conditional acceptance of the offer, Marmor sent a letter to Ziegler summarizing what had occurred. Marmor's letter said:

> "Enclosed please find a photocopy of an offer to purchase the above property received today by us from Mr.

Allan Bachewicz providing for an all-cash deal.

Please be advised that this offer is acceptable to us and has been accepted by us as to our 50% interest. I am herewith officially tendering this offer to you for your acceptance pursuant to paragraph 9 of the Agreement between 5601 N. Sheridan Associates and your partnership dated in 1972.

Please advise us of what action you are taking or intend to take with respect to this contract."

Marmor's letter came to the attention of Milton Schraiber, Statesman's other general partner. At some point during the °30-day period following Associates' conditional acceptance, Schraiber called Marmor, questioning how a contract could have been formed. Schraiber asked to speak to William Wilkow but was told that he would be out of the country until September; Wilkow customarily spent the summer in Europe, leaving in June and returning in September.

On August 8, 1977, more than 30 days after Associates conditionally accepted B&B's offer, Marmor sent letters to Ziegler and Schraiber, referring to the deadlock provision in the joint-venture agreement and to Statesman's failure, within the time allowed, to elect either to accept the offer or to buy Associates' interest in the property. Marmor's letter said in part:

"Since the delivery to you of the Offer, we have heard nothing from your partnership. Accordingly, your partnership is deemed to have consented to the sale. We will, therefore, proceed with the mechanics of the sale, and anticipate your cooperation.

In the event for any reason, you fail to so cooperate, please be advised that under such circumstances we would immediately seek appropriate legal and equitable remedies against you, including but not limited to actions for specific performance to compel your participation in the sale, as well as actions at law for breach of our joint venture agreement and to recover damages suffered by us by virtue of your failure to comply."

Apparently Bachewicz did not see this letter. Bachewicz had had no communication with Associates or Statesman during the 30-day period following Associates' conditional acceptance of his offer. After that time, because he had heard nothing, he believed that a valid, enforceable contract had come into existence, and he then began to make arrangements to complete the purchase of the property.

Schraiber discussed the matter with his attorney, Anthony Pauletto, on August 15, 1977. They attempted to contact William Wilkow, but he was still abroad. Schraiber and Pauletto finally met with Wilkow on September 19, 1977; Ziegler and Marmor also attended the meeting. Schraiber said that he believed that the B&B offer was too low, and Wilkow proposed to sell Associates' interest in the property to Statesman for about $300,000, the amount that Associates would have received under B&B's offer, after the payment of the real estate broker's commission.

Bachewicz wrote to Statesman and Associates on October 5, 1977, informing them that he was prepared to close the sale and asking them to suggest possible dates for that. In response to his letter, Bachewicz received a telephone call from Schraiber, who denied that a valid contract existed. On October 14, 1977, Statesman formally offered to buy Associates' interest in the property, and the sale was completed the following year. Statesman agreed to indemnify Associates for any liability arising out of the earlier transactions with B&B.

The plaintiffs believe, as the courts below held, that the deadlock provision in the joint venture agreement gave Associates the authority to bind Statesman to the contract to convey the property to B&B. We need not consider the validity of that interpretation, for we conclude that, under the sequence of events here, Associates did not properly invoke the deadlock provision in condi-

tionally accepting B&B's offer. In essence, Associates alone received B&B's latest offer in July and, assuming that Statesman would reject the offer, accepted it conditionally under the deadlock provision. Then, after 30 days had passed, Associates interpreted Statesman's inaction as consent to the sale.

We believe that the deadlock provision could come into play only under a different sequence of events. It provided in part, "In the event an offer is received for the purchase of the entire apartment building, and the parties cannot agree whether to accept said offer, the party who desires to accept said offer shall so advise the other party in writing. Thereafter, said other party shall have thirty (30) days within which to either consent to the sale *** or may, within said thirty (30) day period, elect in writing to purchase the interest of the party desiring to sell ***." This must mean that only after Associates learned of Statesman's failure to agree to accept the offer could Associates send Statesman written notice of its intent to invoke the buyout clause in the deadlock provision. It is clear that when Associates sent notice in July 1977 of its conditional acceptance of B&B's offer dated June 29, 1977, Statesman had not previously rejected it. Nor can we infer, from the record before us, that it was identical to an offer that Statesman had already rejected. The only previous formal offer was made in February, and it provided for less cash to be paid at closing. What grew out of the meeting early in June was no more than a draft of a proposed agreement; it was not the formal offer later submitted to Associates. Under the terms of the deadlock provision, only after the parties failed to agree to accept an offer could one party then notify the other of its desire to sell, and in that way trigger the 30-day period. Thus, Associates' letter of July 6, 1977, purporting to invoke the deadlock provision was premature, for the owners had not yet disagreed

whether to accept B&B's latest offer. With respect to that offer, the deadlock did not arise until September 1977, when Schraiber first met with William Wilkow to discuss it, and Wilkow expressed his desire to dispose of Associates' interest in the property on those terms.

We conclude that Statesman did not become bound by its failure to respond within 30 days to the offer submitted by B&B through Associates. Accordingly, we need not consider the other arguments presented in this appeal, concerning the proper measure of damages for the alleged breach. For the reasons stated, the judgments of the appellate and circuit courts are reversed.

*Judgments reversed.*