**LUTHERAN GENERAL HOSPITAL, INC.** an Illinois corporation, n/k/a Advocate Health and Hospital Corporation, Plaintiff,

v.

**PRINTING INDUSTRY OF ILLINOIS/INDIANA EMPLOYEE BENEFIT TRUST,** Health Direct, Inc., an Illinois corporation, Thomas J. Hochleutner, and Amanda Hochleutner, Defendants.

No. 97 C 5978.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 22, 1998.

Joel Daniel Teibloom, Colleen P. Sheehan, Flamm, Teibloom & Woodward, Chicago, IL, for Lutheran General Hospital.

Thadford A. Felton, Cichocki & Armstrong, Ltd., Chicago, IL, David T. Rallo, Arnstein & Lehr, Chicago, IL, for Printing Industry of Illinois/Indiana Association, Thomas J. Hochleutner, Amanda Hochleutner.

Paul L. Langer, Edward Green, McDermott, Will & Emery, Chicago, IL, for Health Direct, Inc.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Lutheran General Hospital, Inc., an Illinois not-for-profit corporation, n/k/a Advocate Health and Hospital Corporation ("LGH"), filed an action against Defendants Printing Industry of Illinois/Indiana Employee Benefit Trust ("PII") and Health Direct Insurance, Inc. ("Health Direct"), alleging violation of the Employee Retirement Income Security Act ("ERISA"),9 U.S.C. 1001, et seq. (Counts I & II)[1] and against Thomas J. Hochleutner and Amanda Hochleutner ("the Hochleutners"), alleging breach of contract (Count III). PII now moves to dismiss Count I, and the Hochleutners move to dismiss Count III. For the reasons set forth below, Defendants' respective motions are denied.

## BACKGROUND

On July 12, 1996, Amanda Hochleutner gave birth prematurely to twins, Mark and Kaitlyn, at LGH. Since the birth of the twins was premature, they required extended hospitalization and neonatal intensive care. During Mark's hospitalization at LGH from July 12, 1996 through September 18, 1996, he incurred medical bills totaling $220,776.05. Kaitlyn was hospitalized from July 12, 1996 through October 9, 1996 and incurred medical bills totaling $271,621.65.

At the time of the twins' birth, their father, Thomas Hochleutner was a participating member in a medical care benefit plan established by PII for various participating employers, employees and eligible dependents ("Plan"). PII is a multi-employer welfare benefit plan existing and operating under the provisions of ERISA. As Thomas Hochleutner's wife, Amanda Hochleutner was eligible for benefits under the Plan. Both twins were also covered by the Plan. The Plan was administered by Health Direct as a third-party administrator.

While at the hospital, Thomas signed a Consent and Authorizations form ("Consent"). Among other provisions, the Consent stated:

3. Authorization For Payment Of Hospital Services—I hereby authorize my insurance company or other third party payor to pay the Hospital for all services rendered to me. I will be fully responsible for payment of any and all charges not covered by third party payors. If I have not paid my outstanding balance after receiv-

---

**1.** On March 17, 1998, LGH filed a voluntary notice of dismissal of Defendant Health Direct pursuant to Fed.R.Civ.P. 41(a)(1)(i). According-ly, Count II, which was brought against Direct Health only, is no longer part of the Amended Complaint.

ing notice from the Hospital, I understand that the Hospital will send my bill to a collection service. I agree to pay the Hospital all costs of such collection service, including reasonable attorney's fees and court costs.

(Am.Compl., Ex. A.) By signing the Consent, LGH maintains that Thomas Hochleutner assigned his benefits due under the Plan in favor of LGH.

On July 15, 1993, Lutheran General Health Practice Organization, Inc. ("HPO") [2] entered into a Hospital Services Agreement ("Services Agreement") with Health Direct to provide hospital services to Health Direct insurance members. (Hochleutners' Mot. to Dismiss at 2.) [3] Section 2.6 of the Agreement states:

HPO agrees that in no event ... shall HPO or its assignees of subcontractors have a right to seek any type of payment ... or have any recourse against the Member, persons acting on the Member's behalf ..., the Group, or Group Service Agreement contract holder for authorized Covered Services provided pursuant to this Agreement except for the payment of applicable Coinsurance and Copayments for authorized Covered Services or fees for non-Covered Services rendered with the informed consent of the Member.

The Service Agreement was in effect at all relevant times.

Although partial payments have been received by LGH in regards to the twins' hospital care and medical services bills, LGH alleges that it is still owed money. As for Mark's bill, LGH received payments totaling $154,376.10 and is allegedly owed a balance of $66,399.95. (Am.Compl.¶ 10.) As for Kaitlyn's bill, LGH received a total of $151,024.33 and a $120,597.52 balance allegedly remains. (*Id.* ¶ 11.)

On July 14, 1997, LGH filed a Verified Complaint in the Circuit Court of Cook County. On August 22, 1997, PII removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 and LGH later amended the Complaint. In Count I, LGH alleges that PII violated ERISA by failing and refusing to pay the remaining balance of the twins' hospital bill. In Count III, LGH alleges that the Hochleutners were obligated to pay the balance due to LGH for all services rendered and not paid for by the third-party payor and that they are in breach of contract for failing to do so.

Both PII and the Hochleutners have filed motions to dismiss the counts against them. PII alleges that Count I should be dismissed because as a health care service provider, rather than a "participant" or "beneficiary" of PII's employee benefits Plan, LGH lacks standing to maintain this action. The Hochleutners allege that Count III should be dismissed because the Service Agreement precludes LGH from recovering any unpaid costs of medical bills from the Hochleutners.

## DISCUSSION

### I. *Standard For a Motion to Dismiss*

When considering a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the Court examines the sufficiency of the complaint, not the merits of the lawsuit. *See Triad Assoc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence that supports the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss will be granted only if the Court finds that the plaintiff can prove no set of facts that would entitle him to relief. *See Venture Associates Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 432 (7th

2. "HPO" is the joint venture between LGH and Greater Northwest Independent Practice Organization ("Northwest") which arranges for provision of hospital services at LGH as well as other health care services at other providers. (Service Agreement at 1.)

3. While not raised by either party, the Court notes that the Service Agreement is not attached to the Amended Complaint, However, the Court considers the Agreement to be part of the plead-

ings and thus, considers it in this 12(b)(6) motion. The Services Agreement is central to the Hochleutners' argument, and it is indirectly referred to in ¶ 6 of the Amended Complaint. Documents that are attached to a defendant's motion to dismiss that are referred to in the plaintiff's complaint and are central to the claim are considered part of the pleadings. *See Venture Associates Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993).

Cir.1993); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On a motion to dismiss, the Court draws all inferences and resolves all ambiguities in the plaintiff's favor and assumes that all well-pleaded facts are true. *See Dimmig v. Wahl*, 983 F.2d 86, 86 (7th Cir.1993).

## II. *PII's Motion to Dismiss Count I*

■ In its motion to dismiss, PII contends that LGH, as a medical service provider, does not have standing to maintain an action under ERISA because it is neither a participant nor a beneficiary as defined by the statute. Moreover, PII argues that LGH lacks standing as an assignee because Thomas Hochleutner did not execute an assignment of benefits when he signed the Consent.

The purpose of ERISA is to provide "a civil enforcement mechanism under which a participant or beneficiary can recover benefits or enforce his rights under a retirement plan." *Healy v. Axelrod Constr. Co. Defined Benefit Pension Plan & Trust*, 787 F.Supp. 838, 842 (N.D.Ill.1992) (*quoting* 29 U.S.C. § 1132(a)(1)(B)). The statute does not say whether assignees may sue ERISA fiduciaries to recover plan benefits. *Lutheran Gen. Hosp. v. BCI HMO, Inc.*, 1997 WL 282944, at *3 (N.D.Ill. May 12, 1997). However, in *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir.1991), the Seventh Circuit established that assignees do, in fact, have standing to sue to recover benefits under ERISA. *BCI HMO*, 1997 WL 282944, at *3.

In *Kennedy*, the Seventh Circuit held that a medical services provider who obtained an assignment of benefits from a plan beneficiary in his care could sue a group health insurer for nonpayment of a claim, provided that the assignee had a mere "colorable claim" to the benefits. 924 F.2d at 700. The Seventh Circuit noted that ERISA "defines a 'beneficiary' as 'a person designated by a participant ... who is or may become entitled to a benefit' under the plan." *Id.* Since the plaintiff in *Kennedy* was designated by the plan beneficiary as the person to receive the benefits, he was held to be a "beneficiary" under the terms of ERISA. *Id.* In addition, the *Kennedy* court defined "participant" and "beneficiary," for jurisdictional purposes, as anyone with a "colorable claim" to bene-

fits. *Id.* (*quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). The court stated, "subject-matter jurisdiction depends on an arguable claim, not on success.... Only if the language of the plan is so clear that any claim as an assignee must be frivolous is jurisdiction lacking." *Id.* In other words, the standard for a colorable claim is lenient. *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 790 (7th Cir.1996). Thus, in *Kennedy*, where the plan specifically provided that direct payment of benefits to the health care provider was possible "at option of the Insurance Company and with the consent of the Policyholder," *id.* at 701, and consent to the assignment had been withheld, the court nonetheless concluded that "[t]he possibility of direct payment is enough to establish subject-matter jurisdiction." *Id.*

■ In the instant case, LGH alleges that by signing the Consent, Thomas Hochleutner executed an assignment of benefits due under the Plan in favor of LGH, and thus, it has standing. The law is clear that as an assignee, a medical service provider has standing to maintain an action under ERISA. *See Kennedy*, 924 F.2d 698; *see also Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins.*, 990 F.2d 925 (7th Cir.1993); *Hospital Group of Illinois v. Community Mut. Ins. Co.*, 1994 WL 714598 (N.D.Ill.Dec.21, 1994); *Lutheran Gen. Hosp. v. Wendy's Int'l, Inc.*, 959 F.Supp. 501 (N.D.Ill.1997); *BCI HMO*, 1997 WL 282944. PII does not appear to dispute this proposition; instead, it argues that by relying on *Kennedy* and supporting cases to establish standing, LGH is "plac[ing] the cart before the horse." (PII's Reply, at 1.) Specifically, PII asserts that when Thomas Hochleutner signed the Consent, he merely authorized LGH to request payment from PII and that he did not assign his benefits to LGH. This assertion, however, is contrary to ERISA case law. For example, in *Lutheran Gen. Hosp. v. BCI HMO, Inc.*, the court found that the plan participant's signing of a "Consent and Authorizations" form, which, in language identical to the Consent here, authorized his insurance company or other third party payor to pay the hospital for all services rendered to his son, was a sufficient assignment of benefits to the hospital. 1997

WL 282944, at *3; *see also Hospital Group of Illinois*, 1994 WL 714598; *Wendy's Int'l*, 959 F.Supp. 501. Cases such as *Pinzur, Ltd. v. The Hartford*, 158 Ill.App.3d 871, 110 Ill. Dec. 961, 511 N.E.2d 1281 (2d Dist.1987), which PII claims establish that a consent and authorization for direct payment form is insufficient to execute an assignment of benefits, merely address Illinois assignment law without reference to ERISA. *See BCI HMO*, 1997 WL 282944, at *4.[4] ERISA cases, however, have found that signing a consent and authorization for direct payment form is a valid assignment for purposes of standing under ERISA.

Therefore, in this case, the Court finds that by signing the Consent, Thomas Hochleutner validly assigned his benefits under the Plan to LGH and, thus, LGH has standing to bring its ERISA claim. Accordingly, PII's motion to dismiss Count I is denied.

### III. *The Hochleutners' Motion to Dismiss Count III*

The Hochleutners contend that Count III of the Amended Complaint alleging breach of contract should be dismissed because ¶ 2.6 of the Services Agreement between Health Direct and HPO precludes LGH from recovering any unpaid costs of medical bills from the Hochleutners—third party beneficiaries of the Services Agreement. In support of their argument, the Hochleutners cite to ¶ 2.6 of the Agreement which reads:

> HPO agrees that in no event ... shall HPO or its assignees or subcontractors have a right to seek any type of payment ... or *have any recourse against the Member*, persons acting on the Member's behalf ..., the Group, or Group Service Agreement contract holder for authorized Covered Services provided pursuant to this Agreement *except* for the payment of applicable Coinsurance and Copayments for authorized Covered Services or fees *for non-Covered Services* rendered with the informed consent of the Member.

(emphasis added). Thus, under the express terms of the Agreement, HPO can only recover co-payments for covered services or fees for non-covered services.

In addition, the Hochleutners maintain that the Consent that they signed, which ostensibly allows LGH to collect from the Hochleutners for "any and all charges not covered by third-party payors," is superseded by ¶ 2.6 of the Agreement which explicitly states that:

> This Section supercedes any oral or written agreement now existing or hereafter entered into between the HPO and the Member ....

LGH offers two responses. First, LGH claims that it is not a "signatory" to the Services Agreement and is therefore not bound by ¶ 2.6 of the Agreement. Second, LGH argues that even if it is bound by ¶ 2.6 of the Agreement, it is still permitted to recover fees for "non-Covered Services" under the terms of the Agreement.

### A. *LGH Is Bound By the Services Agreement*

■ LGH argues that Health Direct and HPO are the only parties bound by the Services Agreement. LGH asserts that it was not a "signatory" to the Services Agreement and therefore it cannot be bound by the Agreement's terms. So, while LGH concedes that HPO is a joint venture between itself (LGH) and Northwest, LGH insists that as a "co-venturer" it is not bound by the contract terms agreed to by its venture—HPO. This Court does not agree.

■ Under Illinois law, a "joint venture" is simply defined as "an association of two or more persons to carry out a single enterprise for profit." *Groark v. Thorleif Larsen & Son, Inc.*, 231 Ill.App.3d 61, 66, 172 Ill.Dec. 799, 596 N.E.2d 78, 81 (1st Dist.1992). As a practical matter, the only distinction between a joint venture and a partnership is that "a joint venture relates to a single enterprise or

---

**4.** The plaintiff in *BCI HMO*, citing *Pinzur*, argued the same distinction between an assignment of benefits and an authorization for direct benefits that PII advances here. The *BCI HMO* court not only criticized the plaintiff's attempt to rely on *Pinzur*, which does not reference ERISA, it also noted that subsequent Illinois appellate cases have "cast doubt on the reasoning of *Pinzur* and have found language similar to [the consent form in question] to constitute a valid assignment." *Id.* (citing *Loyola Univ. Med. Ctr. v. Med Care HMO*, 180 Ill.App.3d 471, 129 Ill.Dec. 360, 535 N.E.2d 1125, 1128 (1st Dist.1989)).

transaction while a partnership relates to a general business of a particular kind." *Id.* Partnership principles govern joint ventures and the rights and liabilities of the members of a joint venture are tested by the same legal principles which govern partnerships. *Id.* (citing *Bachewicz v. American Nat. Bank & Trust Co.,* 111 Ill.2d 444, 448, 95 Ill.Dec. 827, 490 N.E.2d 680 (Ill.1986)). As a co-venturer, or partner, in HPO, LGH is responsible for all of the liabilities and/or obligations of the venture. *See O'Brien v. Cacciatore,* 227 Ill.App.3d 836, 845, 169 Ill.Dec. 506, 591 N.E.2d 1384, 1390 (1st Dist.1992) (partnership law states that "all partners or joint venturers are liable jointly for all debts and obligations of the partnership or venture"). Thus, the Court finds that LGH was responsible for the liabilities and obligations of HPO under the Services Agreement.

In any event, the Services Agreement itself explains that Health Direct and HPO entered into the Agreement to "facilitate the delivery of health care services by HPO Facilities to Health Direct Insurance Members." The Agreement further states that HPO was a joint venture between LGH and Northwest to "arrange for the provision of hospital services at LGH." Since both parties agree that the Hochleutners were Health Direct Insurance Members, it would appear to this Court from the face of the Agreement that the Hochleutners' care at LGH would be covered by all the provisions of the Services Agreement, even if LGH was not a formal "signatory" to it. Thus, under the facts of this case, the Court finds that LGH is clearly bound by the Services Agreement.

### B. *Covered Versus Non–Covered Services*

■ LGH contends that even if it is bound by the Services Agreement, the Hochleutners are still liable for fees for "non-Covered Services" under ¶ 2.6 of the Agreement. The Hochleutners concede this point, but argue that the amounts in dispute in this case relate solely to "covered services" and what are "reasonable and customary charges." According to the Hochleutners, the fees that LGH is seeking to collect from them are for the hospitalization, delivery and newborn care given to their premature twins. Citing to their Group Service Agreement with Health Direct and PII, the Hochleutners maintain that these are unquestionably "covered services."

The ultimate question left for the Court is whether the outstanding fees for medical services sought by LGH are for covered or non-covered services. While the Court is extremely sympathetic to the predicament faced by the Hochleutners, this question simply cannot be resolved on a motion to dismiss. LGH argues one way, and the Hochleutners argue another. Because the amount sought by LGH against PII and the Hochleutners is the same, it would be reasonable to assume that LGH is seeking recovery for what it believes to be "covered services"— otherwise why would it be attempting to collect this money from PII? Nevertheless, LGH's Complaint does not specify whether the outstanding balance owed to it is for "covered" or "non-covered" services, and this Court must draw all inferences and resolve all ambiguities in the plaintiff's favor.[5]

### CONCLUSION

For the foregoing reasons, PII's and the Hochleutners' respective motions to dismiss are denied.

---

5. Moreover, LGH could legitimately plead in the alternative in this case—*i.e.,* the outstanding fees are for "covered" services owned by PII, but if they are not, then they are owed by the Hochleutners for "uncovered" services.