B. SPRINGFIELD, Adm'r v. SARAH B. GREEN.

1. BANKS AND BANKING. *Bank check. Payment. Demand.* If a creditor accept from his debtor a check on a bank for the amount due, it is an appropriation by the debtor of that amount of his deposit in the bank to his creditor, and before his creditor can afterwards hold him responsible as drawer of the check, it is incumbent on the creditor to show that he demanded the payment of the check in a reasonable time, and that payment was refused, or he must show a valid excuse for failing to make presentment in proper time.

2. SAME. *Failure to make demand within reasonable time.* If the creditor fail to present the check within a reasonable time, and the bank in the meantime become insolvent, the drawer is relieved of liability, and the loss must fall on the creditor or holder of the check.

3. SAME. *Presumption as to payment.* When a check is drawn by a debtor and accepted by his creditor, the presumption is that it was not accepted by the creditor as an absolute payment. Whether it is so accepted or not is a question to be determined upon the facts of each case. Facts discussed.

FROM FAYETTE.

Appeal from the Chancery Court.

No record found.

NICHOLSON, C. J., delivered the opinion of the court.

This is a bill filed in October, 1868, by the administrator of H. E. DeGraffenreid against his heirs, distributees and creditors, for the settlement of his estate under the insolvent laws. Among the defendants named in the bill as a creditor is W. A. Williamson, who answers and files a check drawn by H. E. DeGraffenreid, dated May 31, 1862, on the Branch

Bank of Tennessee at Somerville, for $2,500, payable to W. A. Williamson or bearer, as the evidence of his claim upon the estate. He says nothing as to the consideration of the check, or whether it had ever been presented for payment or not; nor does he give any reason why it was not presented, but claims that the estate " is indebted to him in the sum of $2,500, due by his check on the Branch Bank of Tennessee at Somerville," and files the check with his answer.

The administrator and other creditors contested the claim upon the ground that the intestate was not liable on the check, for the reason that it had never been presented for payment to the bank.

Upon the hearing the Chancellor was of opinion that the claim against the estate was valid, and allowed the same, with interest, amounting to $3,100. From this decree the administrator has appealed.

The general proposition is well settled, that if a creditor accept from his debtor a check on a bank for the amount due, it is an appropiation by the debtor of that amount of his deposit in the bank to his creditor, and before his creditor can afterwards hold him responsible as drawer of the check, it is incumbent on the creditor to show that he demanded the payment of the check in a reasonable time, and that payment was refused; or he must show a valid excuse for failing to make presentment in proper time. It is also well settled, that if the creditor fail to present the check within a reasonable time, and the bank in the meantime become insolvent, the drawer is relieved of liability, at least *pro tanto,* and the loss must fall

on the creditor or holder of the check.    Story Bills of Exch., 520; Parson's Mercantile L., 91; 2 Parson's Notes and Bills, 86 and notes.

It follows from these propositions of law, that as Williamson failed to present the check to the bank for payment, and as it appears that DeGraffenreid had at the time a deposit in the bank sufficient to pay the check, it devolves upon Williamson to show a valid excuse failing to make the presentment, and also to show that DeGraffenreid has not been injured by the failure to make the presentment, otherwise he is not entitled to look to the drawer of the check for payment.

To determine whether Williamson has shown a valid excuse for failing to present the check, makes it necessary to examine the facts given in evidence.

The check was drawn and accepted in Somerville, where the bank was located, on the 31st of May, 1862.    This was on Saturday, and on that day or the Monday afterwards, it was the duty of Williamson by the commercial law, to make presentment for payment.    But on Saturday, the date of the check, the assets and books of the bank were packed preparatory to their removal South, in obedience to military orders. On that day it does not appear that any banking business was done in the bank, nor does it appear that either this check or any other was presented to the bank on that day, but it appears that if any check had been presented on that day it could not have been paid, because the money was packed and sealed.    On the next day the assets of the bank

passed into the custody of a military company, and on the succeeding day were carried to Holly Springs, in Mississippi, by the military company. Williamson was a director of the bank and its president, and was fully advised when he received the check of the condition of its assets, and of the arrangement for their removal South.

DeGraffenreid was connected with the military organization, and was probably apprized of the arrangement for the removal of the bank assets, as he seems to have accompanied them to Holly Springs, but there is no proof that when he gave the check he knew it could not be paid, and if we assume that he did know that the assets of the bank were being packed for removal, he might very well suppose that Williamson being president might make the check available.

Williamson also went with the bank assets to Holly Springs, at which place they were turned over to him as custodian, and by him they were conveyed to Selma, Ala., where they were delivered to Torbett and Fisher, president and cashier of the mother bank, with the packages untouched and still sealed. It does not appear that at that time, or at any time afterwards, Williamson made any demand for payment of the check, or that he gave any notice to the officers of the mother bank that he held such check. There is no evidence as to what was afterwards done with the assets so delivered to Torbett and Fisher, whether the packages remained sealed and unbroken, or whether they were opened, and the assets and books used in banking transactions. Nor does it appear that Wil-

liamson had any further connection with them, or how long he remained in the South.

Under these facts the first question to be considered is, whether, when the check was given and accepted, it was the intention of the parties that it was given and accepted in absolute payment of the debt from DeGraffenreid to Williamson? The presumption is that it was not an absolute payment, but it was competent for the parties to contract that it should be an absolute payment, and it devolves on DeGraffenreid to show such contract, either expressly or by implication, otherwise the presumption will stand, unless rebutted by other proof of laches in the presentation of the check and injury to DeGraffenreid.

It appears that the check was dated and filled up by Calvin Jones, who states that when DeGraffenreid signed the check, he stated he owed Williamson that amount, and requested witness to fill up for him the check. Nothing was said, as recollected by witness, about the consideration for which the check was given. The check was handed to witness for collection after the estate of DeGraffenreid was suggested as insolvent, which was done in August, 1865. Witness supposed that DeGraffenreid had withdrawn his deposits from the bank until a short time before his testimony was given, when it was ascertained that they were still in the bank—amounting to over $10,000. Witness never presented the check to the bank for collection, or applied for it in any way, for the reason that he did not believe there was any deposit to the credit of DeGraffenreid until informed of it as before stated.

20—VOL. 7.

It is manifest from this testimony that DeGraffen-reid owed Williamson $2,500; that he had a deposit in bank more than sufficient to meet it, and that he procured a check to be filled up for the purpose of paying the debt. If his object was not to pay the debt but only to furnish Williamson with an acknowledgement of his indebtedness, he would have executed his note, if Williamson did not already have his note, as to which there is no evidence.

With the check so drawn and signed he goes to Williamson and he accepts it. Being the president of the bank, and hence knowing that DeGraffenreid had the money on deposit, knowing further that DeGraffenreid's object was to pay the debt, his acceptance of the check without notifying DeGraffenreid, as far as the proof shows, that the money could not be drawn, furnishes strong evidence that the check was received in payment. As the president of the bank he knew that he would have the custody of the assets until delivered to the mother bank officers. He had full confidence in the solvency of the bank, as conclusively shown by the fact that he was a depositor to the amount of $30,000, and it is reasonable to conclude that if he had presented the check he would only have had the amount added to his deposit account, and hence that in accepting the check, he in fact agreed to hold it as evidence that $2,500 of DeGraffenreid's deposit was appropriated to him, subject to be transferred whenever he chose to present the check. We are therefore of opinion, that in view of the peculiar circumstances attending the giving and receiving

Dickinson *v.* Bowers.

of the check, it was given and received upon the understanding of both parties that it was an appropriation of the amount in payment of the indebtedness of DeGraffenreid to Williamson.

If we are right in this view of the facts, it follows that after the bank became insolvent Williamson could not abandon the check and fall back upon the original indebtedness, but could look alone to the deposit in bank as the means of payment, to which, we think, under the facts and circumstances, he agreed to look in satisfaction of his claim.

We are therefore of opinion that the Chancellor erred, and reverse his decree with costs.