Anna Ruth Sizemore, Plaintiff-in-Error,

*v.*

E. T. Barwick Industries, Inc., Defendant-in-Error.

465 S.W.2d 873.

(*Knoxville,* September Term, 1970.)

Opinion filed April 5, 1971.

JOHN H. CARY, Knoxville, for plaintiff in error; HAYNES, GILREATH & CARY, Knoxville, of counsel.

WILLIAM GROOVER, Knoxville, for defendant in error; CHEEK, TAYLOR & GROOVER, Knoxville, of counsel.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

This is a workmen's compensation proceeding on a direct appeal from an order of the trial judge sustaining the plea of the statute of limitations of defendant-in-error.

We will refer to the parties as they appeared in the trial court; that is, Anna Ruth Sizemore as petitioner, and E. T. Barwick Industries as defendant.

Petitioner alleged on October 4, 1968, she fell down a flight of stairs during the course of her employment at defendant's plant and injured her back.

She further alleged defendant's insurance carrier made voluntary payments of temporary total benefits to her and certain medical expenses; and that the last such payment being made to Dr. Robert Whittle on February 14, 1969.

Petitioner further averred she was unable to work at her regular employment; and is, therefore, entitled to additional benefits.

Defendant filed the following plea:

"That the defendant ceased making payments in this case on February 12, 1969, rather than on February 14, 1969, as alleged in the petition; and, therefore,

this case is barred by the statute of limitations as set out in T.C.A. Section 50-1003.''

Petitioner joined issue on the plea.

Defendant offered the testimony of Mr. Henry Morton, Claim Manager of defendant's insurance carrier, in support of the plea which comprises the bill of exceptions filed in the case.

Morton testified the draft to Dr. Whittle was issued and mailed on February 12, 1969; and that all other payments to petitioner and Dr. Whittle had been made through the mail.

It was stipulated Dr. Whittle's office was closed on February 13, 1969; and that the draft had been indorsed by Dr. Whittle and cashed on February 14, 1969.

The trial judge found defendant ceased making payments on February 12, 1969, when the draft to Dr. Whittle was mailed rather than when it was received and cashed by him. He further found suit was not filed until February 14, 1970; and, therefore, the action was barred by the one year statute of limitations as provided by T.C.A. Section 50-1003 and dismissed the suit.

Petitioner excepted to the order and prayed an appeal to this Court which was perfected.

Petitioner assigns as error the action of the trial judge in holding defendant ceased making payments on February 12, 1969.

We are of the opinion the assignment must be sustained and the cause reversed and remanded.

T.C.A. Section 50-1003 provides, in part:

"* * * provided that, within said one (1) year period voluntary payments of compensation are paid to the injured person or his dependents, an action to recover any unpaid portion of the compensation, payable under this law, may be instituted within one (1) year from the time the employer shall cease making such payments, except in those cases provided for by Section 50-1024."

"The law as regards the tolling of the one year statute of limitations for compensable injuries is that voluntary payments of compensation by the employer or his insurance carrier within one year of the injury toll the running of the statute. T.C.A. Section 50-1003; *Adams v. Patterson*, 199 Tenn. 603, 288 S.W.2d 453 (1956). Voluntary payments of medical expenses also toll the running of the statute. *John Sevier Motor Company v. Mullins*, 205 Tenn. 227, 326 S.W.2d 441 (1959); *Chandler v. Travelers Insurance Company*, 212 Tenn. 199, 369 S.W.2d 390 (1963)." *City of Bristol v. Reed*, 218 Tenn. 173, 402 S.W.2d 124 (1966).

The sole issue to be resolved in this Court is whether petitioner brought her action within the statutory period.

We hold payments ceased when the last draft was received by Dr. Whittle on February 14, 1969.

In doing so, we recognize the following rule:

"While this Court is bound by the findings of the trial judge on questions of fact, whenever there is any evidence to sustain the findings, it is not bound by the conclusions drawn by the trial judge from undisputed facts, and may reach a different conclusion from that of the trial court on the same findings of

fact." *Travelers Ins. Co. v. Googe,* 217 Tenn. 272, 397
S.W.2d 368 (1965).

■ The word "payment" has a well defined meaning
in law; as said in *Sullivan v. Tigert,* 1 Tenn.App. 262
(1925):

"A payment is a delivery of money or its equiva-
lent in either specific property or services by one per-
son from whom it is due to another person to whom it
is due. In a legal sense there must be—(1) a delivery,
(2) by the debtor, or his representative, (3) to the
creditor or his representative, (4) of money or some-
thing accepted by the creditor as the equivalent there-
of, (5) with the intention on the part of the debtor to
pay the debt in whole or in part, and (6) accepted as
payment by the creditor."

We observe Mr. Morton referred to the instrument
as a draft while Counsel for both parties refer to it as
a check.

It is common knowledge the terms are sometimes used
interchangeably.

■ While we recognize a draft is distinguishable
from a check by the fact that the drawee of a check is a
bank, while the drawee of a draft may be any person or
firm, we think the following rules as to payment apply
by either means.

■ It is fundamental a check is not money but is a
mere order to the drawee bank to pay a sum of money
at some future time. "That a check for money is not
money until it has been paid is too self-evident to admit
of argument——." *Lytle v. Etherly,* 18 Tenn. 389 (1837).

■ When a check is given and accepted the presumption is that it is not accepted by the creditor as absolute payment. Whether it is so accepted or not is a question of fact. *Springfield v. Green,* 66 Tenn. 301 (1874).

"The delivery to, or acceptance by, the creditor of his debtor's check, although for convenience often treated as a passage of money, is not payment, even though the check is certified before delivery, in the absence of any agreement or consent to receive it as payment * * * " 70 C.J.S. Payment sec. 24, pages 233, 234.

■ The generally accepted rule is that where a check delivered to a creditor is paid in due course, the debt is discharged pro tanto as of the time the check was received. 70 C.J.S. Payment sec. 24, page 235.

■ In the case of *Sturgill Lumber Company v. Maynard,* 447 S.W.2d 638 (Ky.1969), the employer's insurance carrier made voluntary payments of compensation to the claimant, the last of which was made by check issued on September 10, 1965, for the period from July 30, to August 31, 1965. The claimant filed his application for compensation with the Workmen's Compensation Board on September 9, 1966. The employer's argument was that voluntary payment ceased as of the last day of the period for which the last payment was made. Under the Kentucky statute requiring that application for compensation be filed with the Board "within one year after the cessation of voluntary payments, if any have been made," the Court of Appeals of Kentucky held:

"We think the plain meaning of the statute is that 'payment' is the receipt by the workmen of an instrument of payment, and payment will be deemed to have

ceased as the day of the last instrument of payment was received. The voluntary payments to Maynard thus must be held to have ceased when he received the September 10 check, which was less than one year before he filed his application for compensation.''

In the case of *Seliga v. American Mutual Liability Insurance Company*, 174 So.2d 878 (La.App.1965) voluntary payments were made to the claimant by check, the last such check being dated November 21, 1961. Suit was filed on November 23, 1962. The trial court sustained the defendant's plea of the statute of limitations and dismissed the case. The Court of Appeals of Louisiana reversed and remanded.

The Louisiana statute of limitations provides that where an employer makes voluntary compensation payments, the limitation period for bringing a workmen's compensation claim ''shall not take effect until the expiration of one year from the time of making the last payment.'' Under this statute the Louisiana Court of Appeals held:

''It is necessary to remand the instant case for the purpose of determining the date on which the check was received by Mrs. Seliga or her attorney. If the instrument was cashed, and we believe that it was, the time of making the last payment of compensation within the purview of LSA-R.S. 23:1209 was the date of actual receipt. Assuming the check was honored when presented, if one year had not expired between the time of its receipt and the time this suit was filed, the exception must be overruled. If one year had expired between the time of receipt and the date on which suit was filed, the exception must be maintained and the suit dismissed.''

Defendant's sole authority for its position that voluntary payments ceased on the date the last draft was issued and mailed to petitioner's doctor is the case of *Brandtjen and Kluge, Inc. v. Pope,* 28 Tenn.App. 679, 192 S.W.2d 496 (1946), wherein the court quoted the following from 48 C.J., Section 9, page 594:

"Remittance by mail or other carrier. Payment is not effectuated by sending the amount due to the creditor by mail or other public carrier until the remittance gets in the hands of the creditor, unless he expressly or by implication directs or consents that payment be so made, or such mode of payment is according to the usual course of dealings between the parties, from which the creditor's assent can be inferred."

However, we think the facts in that case are distinguishable from those of the instant case. Pope, a resident of Shelby County, purchased a printing press and other equipment from Brandtjen and Kluge, a foreign corporation, under a conditional sales contract and executed notes to cover the deferred balance.

Pope mailed checks as the notes became due to the company which were accepted.

The company later filed a replevin suit on ground of default in the payment of certain notes. The suit was tried in Chancery Court before the Chancellor and a jury.

At the trial, the evidence showed all notes had been paid by Pope by checks deposited in the mail, the last two of which had been returned to Pope, on the ground Pope had failed to purchase insurance on the equipment payable to complainant in case of loss.

The Chancellor charged the jury: "The only ground that has been produced that would warrant the complainant to repossess the property is—were the monthly payments in default, and in default more than ten days."

He further charged: "The mailing is sufficient payment. The depositing of the check in the mail is delivery under the law and within the time."

The company assigned this charge as error on the contention the place of payment was at the home office of the company, and this place of payment having been agreed on, the payments to be valid must have been made there.

After quoting the above rule from 48 C.J., supra, the Court of Appeals said:

"Certainly under the facts and the course of dealing between complainant and defendant the complainant consented that the payments might be made by use of the ordinary mails."

It is clear the court did not hold the mere depositing of a check in the mail amounted to an absolute payment as of the date of mailing.

Reversed and remanded at the cost of defendant.

DYER, CHIEF JUSTICE, and HUMPHREYS and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.