PHILIP GROARK, Plaintiff-Appellant, v. THORLEIF LARSEN AND SON, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—91—0160

Opinion filed June 17, 1992.

McKenzie & McKenzie, P.C., of Chicago (Kevin D. Sprow and Robert E. McKenzie, of counsel), for appellant.

Kirk L. Miller, of Highland Park, for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

In this retaliatory discharge action, plaintiff, Philip Groark, appeals from the circuit court's dismissal of his complaint as against one defendant, Larsen/Precision Joint Venture, upon its motion under section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619).

We affirm.

Plaintiff filed a two-count second amended complaint seeking damages for retaliatory discharge against three named defendants: (1)

Thorleif Larsen & Son, Inc. (Larsen); (2) Precision Contractors, Inc. (Precision); and (3) Larsen/Precision Joint Venture (Joint Venture). Count I of the complaint was directed against both Larsen and Joint Venture. Count II was directed against Precision only and is not at issue on this appeal. Joint Venture is the only defendant involved in this appeal.

In his complaint, plaintiff alleges that he was hired by Joint Venture in April 1986. From April 15, 1986, to October 12, 1987, he was employed by Joint Venture and Larsen at various times as a brick layer and as a foreman. The W-2 tax forms for 1987 attached to plaintiff's complaint reveal earnings of approximately $1,277 from Joint Venture and $12,338 from Larsen.

On April 8, 1987, plaintiff was injured while in the scope of his employment with Joint Venture, but he continued to work through May 1, 1987, at respective times for Larsen and Joint Venture. On May 1, 1987, plaintiff notified Larsen and Joint Venture that he could no longer work due to his April 8 injury.

Joint Venture or its insurer paid plaintiff's medical bills and temporary total disability through June 6, 1987. On July 16, 1987, plaintiff filed a workers' compensation claim against Joint Venture.

On October 11, 1987, plaintiff's doctor authorized him to return to work but plaintiff was then advised by Larsen and Joint Venture that his employment was terminated.

In the October 25, 1987, Chicago Tribune newspaper, an advertisement for bricklayers appeared for Larsen for a construction job in Oak Lawn.

Plaintiff alleges that the sole reason for his termination was based on his seeking workers' compensation.

By affidavit, plaintiff also declares that Joint Venture and Larsen occupied the same office space, used the same telephones, and employed many of the same personnel. Plaintiff further states that Larsen exercised discretionary authority over the allocation of his assignments between Larsen and Joint Venture.

By written agreement, Joint Venture was created between Larsen and Precision for the sole and limited purpose to bid, obtain and perform the masonry work on one project, *i.e.*, the construction of a terminal facility for United Airlines at O'Hare Airport. The agreement specifically provides that "the parties hereto desire to enter into this Joint Venture Agreement for the joint performance of the CONTRACT of United Airlines." Larsen had a 70% interest and Precision had a 30% interest.

The airline project consisted of two phases. During phase I, Joint Venture employed up to 82 field personnel on a daily basis. Phase I was substantially completed by August 4, 1987. After the completion of phase I, Joint Venture reduced its work force to five or less workers. Phase II could not commence until March 1, 1988. Accordingly, when plaintiff attempted to return to work on October 11, 1987, Joint Venture did not require a bricklayer.

On May 21, 1990, the circuit court granted defendants' section 2—619 motion to dismiss count I of plaintiff's complaint as against Joint Venture and stated "[y]ou [plaintiff] can't collect twice." On December 11, 1990, the circuit court denied plaintiff's motion to reconsider and indicated that it had dismissed count I against Joint Venture due to the unavailability of work at Joint Venture when plaintiff attempted to return to work.

Plaintiff first submits that the circuit court erred when it dismissed his claim against Joint Venture on May 21, 1990, because the circuit court reasoned that he "can't collect twice." To the extent that the circuit court based its decision on the belief that a discharged employee could not pursue a retaliatory discharge action after receiving workers' compensation benefits, such reasoning is incorrect. However, "[i]t is well settled that on appeal the correctness of the trial court's action, and not its reasoning, is the subject of review." *Village of Northbrook v. Cannon* (1978), 61 Ill. App. 3d 315, 319, 377 N.E.2d 1208.

■ Plaintiff recognizes that the unavailability of work has been held to be a valid and nonpretextual basis to discharge an employee in *Lewis v. Zachary Confections Co.* (1987), 153 Ill. App. 3d 311, 505 N.E.2d 1087, but attempts to distinguish *Lewis* on the grounds that it did not involve a joint venture.

In response, Joint Venture contends that it cannot be held liable for retaliatory discharge because it had no work available at the time plaintiff attempted to return to work, relying on *Lewis*.

■ Section 2—619(a)(9) provides for the involuntary dismissal of an action where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) Accordingly, in a motion brought under section 2—619, the court must consider whether the defendant has brought forth facts which constitute an affirmative defense that could defeat the plaintiff's cause of action. *Prodromos v. Poulos* (1990), 202 Ill. App. 3d 1024, 1028, 560 N.E.2d 942.

In the present case, plaintiff's cause of action is based on retaliatory discharge and the "affirmative matter" advanced by Joint Venture to defeat plaintiff's claim is the unavailability of work.

■ An at-will employment relationship generally may be terminated at any time for any reason or no reason at all. (*Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 562 N.E.2d 282.) The tort of retaliatory discharge was recognized as an exception to the general rule in order to prevent employers from putting employees in a position of having to choose between their jobs and seeking their remedies under the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*). (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 184, 384 N.E.2d 353.) Illinois has a strong public policy to insure the protection of workers covered by the Workers' Compensation Act. *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 150, 473 N.E.2d 1280.

■ Three elements are necessary to state a cause of action for retaliatory discharge for filing a workers' compensation claim: (1) the plaintiff's status as an employee of the defendant before injury; (2) the plaintiff's exercise of a right granted by the Workers' Compensation Act; and (3) the employee's discharge causally related to the filing of the workers' compensation claim. (*Lewis*, 153 Ill. App. 3d at 315.) The first two elements are not in dispute in the present case.

■ The mere discharge of an employee who has filed a workers' compensation claim does not satisfy the requirement of causal relationship if the basis for the discharge is valid and nonpretextual. *Slover v. Brown* (1986), 140 Ill. App. 3d 618, 488 N.E.2d 1103 (an employer may fire an employee for excessive absenteeism).

A valid nonpretextual basis for discharge which would negate this element includes the discharge of an employee due to lack of work. (*Lewis*, 153 Ill. App. 3d at 316.) In *Lewis*, the court reversed a jury verdict for the plaintiff because the evidence was insufficient to support the verdict that the plaintiff was a victim of retaliatory discharge. The plaintiff, as well as 8 or 10 other employees, had been laid off due to a slowdown of production.

■ Similarly, where the uncontradicted evidence revealed that the plaintiff's termination was part of a general cutback in employment by the defendant, no retaliatory cause of action was found to exist. *Armstrong v. Freeman United Coal Mining Co.* (1983), 112 Ill. App. 3d 1020, 446 N.E.2d 296 (the court affirmed the entry of summary judgment for the defendant).

Like the defendants in *Lewis* and *Armstrong*, Joint Venture had reduced its work force. In August 1987 after the work on phase I of

the airline project had been completed, Joint Venture cut back the number of its employees from about 82 to 5 workers. Plaintiff wanted to return to work in October of 1987. Phase II of Joint Venture's project was to commence in March of 1988.

In light of Joint Venture's overall reduction in its work force, we find that the elements required to sustain a cause of action for retaliatory discharge against Joint Venture have not been met.

Next plaintiff asserts that it was error to dismiss his complaint against Joint Venture because Joint Venture and Larsen are not separate entities. Plaintiff argues that Joint Venture cannot be treated separately from its participants, *i.e.*, Larsen and Precision. Plaintiff submits that even if Joint Venture had no work available, Larsen had work available as evidenced by the newspaper ad for bricklayers. Thus, under plaintiff's "one entity" theory, the unavailability of work at Joint Venture is immaterial because work was available at Larsen and Larsen shifted its workers between assignments at Larsen and Joint Venture.

■ A joint venture is an association of two or more persons to carry out a single enterprise for profit. (*Smith v. Metropolitan Sanitary District of Greater Chicago* (1979), 77 Ill. 2d 313, 318, 396 N.E.2d 524; *Ambuul v. Swanson* (1987), 162 Ill. App. 3d 1065, 516 N.E.2d 427.) A joint venture is not regarded as identical with a partnership, although, as a practical matter, the only distinction between the two entities is that a joint venture relates to a single specific enterprise or transaction while a partnership relates to a general business of a particular kind. *Smith*, 77 Ill. 2d at 317-18; *Ambuul*, 162 Ill. App. 3d at 1070.

■ Partnership principles govern joint ventures. *Bachewicz v. American National Bank & Trust Co.* (1986), 111 Ill. 2d 444, 448, 490 N.E.2d 680; *Smith*, 77 Ill. 2d at 318 (the rights and liabilities of the members of a joint venture are tested by the same legal principles which govern partnerships); *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 438, 394 N.E.2d 380 ("[w]hen a joint venture is found to exist, the legal principles pertaining to the relationship between partners govern"); *Ambuul*, 162 Ill. App. 3d at 1070 (a joint venture "relationship is governed by the legal principles applicable to partnerships").

A joint venture, like a partnership, is liable to third persons for wrongful acts of its venturers done in the course of the joint venture agreement. See *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 588, 410 N.E.2d 902 ("[e]very member of a joint venture is liable to third persons for acts of his fellow venturers done in the

course of the enterprise"); *Baker Farmers Co. v. ASF Corp.* (1975), 28 Ill. App. 3d 393, 396, 328 N.E.2d 369 ("one member of the joint venture is liable to third parties for acts of his fellow venturer made in the course of the enterprise"); *Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1972), 9 Ill. App. 3d 408, 413, 292 N.E.2d 205 ("each member of a joint venture, like a partner, is liable to third persons for the acts of any other member within the scope of the joint venture agreement").

■■ The sole business purpose of Joint Venture related to the construction of the airline terminal at O'Hare Airport. Applying the partnership liability principle, Joint Venture can only be liable to third persons for the acts or omissions of its members relating to that project. Accordingly, Joint Venture cannot be held liable because of the availability of work at Larsen's Oak Lawn project, such work being outside the stated scope of the joint venture.

Our decision in this case regarding Joint Venture does not affect the remaining defendants, Larsen and Precision. An employee can state a valid cause of action for retaliatory discharge against an employer who discharges the employee for filing a workers' compensation claim against a former employer. *Darnell v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 473 N.E.2d 935.

■■ Next plaintiff contends that even if no work was available in October of 1987, Joint Venture had a duty to recall him when work began on phase II in March of 1988. Plaintiff first advanced the right to recall issue in his reply brief to this court and relied on *Motsch v. Pine Roofing Co.* (1988), 178 Ill. App. 3d 169, 533 N.E.2d 1.

We find that plaintiff has waived this issue for purposes of appeal. Supreme Court Rule 341 mandates that points not argued in appellant's original brief "are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (134 Ill. 2d R. 341(e)(7); see also *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 141-42, 478 N.E.2d 384 ("an issue not raised in the circuit court cannot be raised for the first time on appeal"); *Yates v. Doctor's Associates, Inc.* (1990), 193 Ill. App. 3d 431, 442, 549 N.E.2d 1010 ("an issue not presented to or considered by the trial court cannot be raised for the first time on review").) Failure to propose a particular theory before the circuit court and then to advance it before the appellate court is unfair to the other party, who had no opportunity to present pertinent rebuttal evidence on such theory which could have had a bearing on the disposition of the case. See *People v. Edwards* (1976), 35 Ill. App. 3d 807, 809, 342 N.E.2d 800.

Moreover, the *Motsch* case is clearly distinguishable from the present case. Unlike plaintiff in the instant case, the plaintiffs in *Motsch* expressly alleged in their complaint a cause of action for retaliatory discharge and a separate count for retaliatory refusal to recall.

Judgment affirmed.

TULLY and CERDA, JJ., concur.