AMERICAN STANDARD INSURANCE COMPANY, Plaintiff-Appellant, v. PAUL BASBAGILL *et al.*, as Independent Co-Adm'rs of the Estate of Peter G. Sawczuk, Deceased, *et al.*, Defendants-Appellees.

Second District   No. 2—00—1476

Opinion filed August 21, 2002.

Eileen P. Lenhardt, of James M. Hoffman & Associates, of Vernon Hills, for appellant.

No brief filed for appellees.

JUSTICE KAPALA delivered the opinion of the court:

Plaintiff, American Standard Insurance Company, appeals from an order entered pursuant to a complaint for a declaratory judgment. The order determined that plaintiff had a duty to defend a tort suit (the Sawczuk suit) brought by Paul Basbagill and Peter Bencak, as administrators of the estates of Peter Sawczuk and his family, against plaintiff's insureds, Randy E. Bresnahan and Anthony P. Pease. Bresnahan and Pease were named also as defendants in plaintiff's complaint for declaratory judgment. Plaintiff asserts that, by offering to settle for the policy limit and by tendering that amount to the court via interpleader (see 735 ILCS 5/2—409 (West 2000)), it has discharged its contractual duty to defend even though the Sawczuk suit was still pending. We disagree and affirm.

Plaintiff issued an automobile liability insurance policy to Bresna-

han, covering his 1990 Ford Bronco for up to $40,000 per incident. On April 19, 1997, with the policy in force, the Bronco collided with Peter Sawczuk's car, killing Sawczuk, his wife, and their two daughters. On January 27, 1999, Basbagill and Bencak, the administrators of the Sawczuk estates, sued Bresnahan and Pease in the circuit court of Lake County, alleging that, although the identity of the driver was in question, either Bresnahan or Pease was driving the Bronco and was at fault when the Bronco collided with the Sawczuk car.

On March 30, 1999, American Standard filed the two-count complaint in the case now before this court. Count I, for interpleader, states that, although plaintiff does not admit any liability in the Sawczuk suit, the total claims there could equal or exceed the Bresnahan policy's $40,000 limit. In count I plaintiff asks for leave to deposit $40,000 with the clerk of the circuit court so that, when the Sawczuk suit is resolved, the money can be distributed according to an appropriate court order. Count II seeks a declaration that granting plaintiff judgment on count I relieves it of any further duty to defend Bresnahan or Pease in the Sawczuk suit. Plaintiff relies on the following language in part I of the policy:

"**We** will pay compensatory damages an **insured person** is legally liable for because of **bodily injury** and **property damage** \*\*\*. **We** will defend any suit or settle any claim for damages payable under this policy as **we** think proper.

If a suit involves both compensatory and punitive or exemplary damages, **we** will defend the compensatory damages. **We** will not defend the punitive or exemplary damage portion of the suit. HOWEVER, **WE** WILL NOT DEFEND ANY SUIT AFTER **OUR** LIMIT OF LIABILITY HAS BEEN OFFERED OR PAID." (Emphasis in original.)

The policy does not define "offered" or "paid."

Pease filed an answer to the complaint. Bresnahan did not file an answer. Plaintiff moved for summary judgment on both counts of the complaint. In seeking summary judgment on count II, plaintiff argued that, under *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23 (1987), and *Novak v. American Family Insurance Co.*, 183 Wis. 2d 133, 515 N.W.2d 504 (1994), part I of the policy implies that its duty to defend the Sawczuk suit would end when it tendered the $40,000 policy limit to the court via interpleader. Pease did not oppose summary judgment for plaintiff on count I, but he argued that plaintiff could not discharge its contractual duty merely by tendering its policy limit to the court before the Sawczuk suit had been resolved.

The trial court initially granted plaintiff summary judgment on both counts of its complaint. Pease moved to reconsider the judgment

on count II, arguing that, under *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535 (2000), plaintiff had not discharged its contractual duty to defend and that to allow plaintiff to withdraw from the defense of its insured while the tort suit awaited resolution would violate public policy.

Plaintiff responded that *Douglas* was both distinguishable and wrongly decided. Plaintiff also filed the affidavit of Charles Swearingen, its casualty claims specialist. Swearingen stated that in 1998 he wrote to Pease and the representatives of the Sawczuk estates. Pease, who may have been the passenger in Bresnahan's Bronco, and the Sawczuk estates had potential claims under Bresnahan's policy. Swearingen proposed to discharge plaintiff's liability as insurer by paying each party $8,000, thus exhausting the $40,000 liability limit. The offer was rejected.

The trial court vacated the summary judgment on count II and held a bench trial on that count. The sole witness, Charles Swearingen, testified consistently with his affidavit. The trial court ruled in favor of Pease on count II. (Plaintiff received a default judgment against Bresnahan on this count.)

The court gave two reasons for its holding. First, plaintiff had not satisfied its contractual duty to defend. Finding the term "offered or paid" ambiguous and construing it against plaintiff, the court reasoned that the $40,000 policy limit would not be "paid" until a claimant received it via a settlement or judgment establishing plaintiff's legal liability. Thus, the money had been tendered to the court, but it had not been "paid." Also, because the equal distribution that Swearingen had proposed lacked any proven relation to the relative merits of the parties' claims, there had been no valid "offer."

Second, the court held that under *Douglas*, public policy would not allow plaintiff to withdraw from the defense of the Sawczuk suit in mid-course. Thus, regardless of the proper construction of the policy, plaintiff could not use an interpleader judgment to free itself of the duty to defend.

Plaintiff timely appealed. Pease has not filed an appellee's brief. However, the record is short and we choose to decide the merits of the appeal. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

On appeal, plaintiff argues that the trial court erred in entering judgment for Pease on count II of the complaint. Plaintiff reasons that its duty to defend arises solely from the Bresnahan policy and that it met its duty (a) when it "offered" to divide the $40,000 limit equally among the four Sawczuk estates and Pease; and (b) when it "paid" the limit by tendering $40,000 to the court under the interpleader

judgment. Plaintiff also argues that *Douglas* is unsound and that nothing in public policy prevents plaintiff from limiting its duty to defend.

The judgment on count I of the complaint, for interpleader, is not on appeal. Only the judgment on count II is at issue. We agree with the trial court that plaintiff has not fulfilled its contractual duty to defend. We affirm the judgment without deciding whether the duty to defend clause violates public policy.

In arguing that it is relieved of its contractual duty to defend, plaintiff relies on the policy's statement that plaintiff will not defend any suit against an insured after the policy's liability limit has been "offered or paid." The policy does not define "offered or paid." However, plaintiff asserts that this language is unambiguous and that the undisputed facts prove that plaintiff has "offered" and "paid" the policy limit. We disagree.

■ We hold first that plaintiff has waived any assertion that it discharged its duty to defend by "offering" to divide the policy limit among the four Sawczuk estates and Pease. Although plaintiff raised this argument at the trial, its complaint nowhere alleges this theory or any facts to support it. A party must recover, if at all, according to the case he has made for himself by his pleadings. *Lempa v. Finkel*, 278 Ill. App. 3d 417, 424 (1996). Proof without pleadings is as defective as pleadings without proof. *Colonial Inn Motor Lodge, Inc. v. Gay*, 288 Ill. App. 3d 32, 40 (1997). Thus, plaintiff may not now rely on the unpleaded assertion that it "offered" the policy limit and thus discharged its duty to defend.

Two days after we heard oral argument, plaintiff moved to amend count II to allege that plaintiff "offered" the $40,000 policy limit when Swearingen proposed distributing the money among the five remaining parties in the Sawczuk suit. We denied this motion. On appeal, a party may move to amend its pleadings. 155 Ill. 2d R. 362(a). However, no such motion will be considered "if made after the cause has been submitted for decision." 155 Ill. 2d R. 362(e). By the time plaintiff filed its motion to amend, the cause had been submitted for decision. See *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 515 (1994); *Lee Shell Co. v. Model Food Center, Inc.*, 111 Ill. App. 2d 235, 247-48 (1969). Therefore, the proposed amendment is not before us.

We now consider the issue that is properly before us, that is, whether the trial court erred in holding that, under the language in part I of the Bresnahan policy, an insurer has not "paid" a policy limit by tendering it to the circuit court through an interpleader action to distribute after the suit against its insured is resolved. Apparently, no Illinois court has considered this precise issue. Plaintiff asserts that

courts elsewhere have held that language similar to the disclaimer in part I allows an insurer to discharge its duty to defend even before the suit against the insured has been concluded by a judgment or a settlement. Plaintiff urges us to rule similarly. For the reasons that follow, we decline to do so.

■ An insurer's duty to defend its insured arises from the contract of insurance. *Zurich*, 118 Ill. 2d at 48. Because the duty to defend is a creature of contract, determining the scope of the duty requires us to construe the policy. The construction of an insurance policy is a question of law that we decide *de novo*. *Roth v. Illinois Farmers Insurance Co.*, 324 Ill. App. 3d 293, 295 (2001). As with any contract, we must ascertain the parties' intentions. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). In doing so, we give unambiguous words their ordinary meanings (*Outboard Marine*, 154 Ill. 2d at 108) but construe ambiguous language in favor of the insured (*Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 223 (1995)). Policy language is ambiguous if it is susceptible to more than one reasonable interpretation. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 293 (2001).

Under part I of the Bresnahan policy, plaintiff "will defend" a suit against the insured, but only until the limit of liability has been paid. As noted, the policy does not define "paid." Plaintiff asserts that, once it tendered the $40,000 policy limit to the circuit court, the money had been "paid." However, we believe that an insurer has not "paid" money under a policy until the insurer has surrendered any claim to the money and in the process has fulfilled an obligation to the recipient.

Plaintiff's contention that it has "paid" its $40,000 liability limit to the circuit court via interpleader is not without merit. Plaintiff delivered the money with no guarantee that it would get any of it back. One court has held (with little analysis) that, by making such a conditional tender, an insurer has "paid" its liability limit. See *Viking Insurance Co. of Wisconsin v. Hill*, 57 Wash. App. 341, 348, 787 P.2d 1385, 1389 (1990). Another court appears to have reached a similar conclusion, although it is unclear to us whether the insurer admitted liability or relinquished any claim to the interpleaded funds. See *United States Fire Insurance Co. v. Barker Car Rental*, 944 F. Supp. 739, 744 (S.D. Ind. 1996), *rev'd on other grounds*, 132 F.3d 1153 (7th Cir. 1997). However, assuming such a construction is reasonable, we think that an opposing one is also reasonable.

Dictionaries regularly define "payment" as the delivery of money or its equivalent to the person to whom it is due *in satisfaction of an obligation*. See, *e.g.*, Black's Law Dictionary 1150 (7th ed. 1999); Web-

ster's Third New International Dictionary 1659 (1993). So do many courts. In *Zimmerman v. Illinois Farmers Insurance Co.*, 317 Ill. App. 3d 360 (2000), in a different context, we observed that a "payment" under an insurance policy is "the fulfillment of a promise or the performance of an agreement." *Zimmerman*, 317 Ill. App. 3d at 366-67. The word "payment" or "paid" did not appear in the policy itself, and thus *Zimmerman* does not apply directly. However, our opinion illustrates that the term "payment" is routinely taken to connote the satisfaction of an obligation.

Courts elsewhere have ascribed similar meaning to the term "payment." See, *e.g.*, *Rosenman v. United States*, 323 U.S. 658, 89 L. Ed. 535, 65 S. Ct. 536 (1945); *Sizemore v. E.T. Barwick Industries, Inc.*, 225 Tenn. 226, 231, 465 S.W.2d 873, 875 (1971); *Votzmeyer v. Votzmeyer*, 964 S.W.2d 315, 321 (Tex. Ct. App. 1998). Under this definition, a conditional remittance, especially one to an intermediary or bailee, is not a "payment."

*Rosenman* well illustrates this reasoning. There, the petitioners sought a refund of federal estate taxes that were due in 1934. (The return was not due until 1935.) In 1934, they delivered a check to the government along with a letter contending that the petitioners did not owe the full sum; that they were paying the money under protest; and that they delivered the check solely to avoid penalties and interest. *Rosenman*, 323 U.S. at 659-60, 89 L. Ed. at 538-39, 65 S. Ct. at 537. The government put the money into a "suspense account" until the petitioners filed their return in 1935. In 1938, the government applied money in the suspense account to satisfy the assessment, and the petitioners submitted more money to cover the deficiency that the government had determined.

The petitioners filed a refund claim in 1938 and another claim in 1940. The law required a claim to be filed " 'within three years next after the payment of such tax.' " *Rosenman*, 323 U.S. at 659, 89 L. Ed. at 538, 65 S. Ct. at 537, quoting 26 U.S.C. § 910 (1940). The statute did not then define "payment." In arguing that the claim was untimely, the government asserted that the petitioners paid the tax in 1934, when they delivered the check.

Disagreeing, the Court held that all "payments" were made in 1938, when the government applied the balance in the suspense account to the taxes assessed and the petitioners paid the deficiency. The delivery of the check in 1934 was not a "payment" under the statute:

> "[T]he taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely *an interim arrangement to cover whatever contingencies the future might define.* The tax obligation did not become defined until *** 1938. And this is

the practical construction which the Government has placed upon such arrangements. \*\*\* [The funds in the suspense account] are held but as a *deposit made in the nature of a cash bond* for the payment of taxes thereafter found to be due." (Emphasis added.) *Rosenman*, 323 U.S. at 662, 89 L. Ed. at 540, 65 S. Ct. at 538. See also *Malachinski v. Commissioner of Internal Revenue*, 268 F.3d 497, 506-08 (7th Cir. 2001) (tax court properly held that money taxpayer submitted in 1984 to cover possible deficiency in 1980 taxes was a "deposit," not a "payment" that would give tax court jurisdiction over taxpayer's claim for a credit, where money was delivered before any deficiency had been determined, amount was unrelated to deficiency eventually calculated, and taxpayer did not indicate that he intended remittance to be a payment).

■ From these authorities, it follows that money has not been "paid" until an obligation has been established and the obligee has received what he is due. That is not the case here. As of now, plaintiff's $40,000 check sits in the circuit court. The circuit court itself is not owed any of the money; it merely holds the funds until they are delivered to their rightful recipient. Indeed, because the Sawczuk suit is unresolved, we do not yet know who that recipient is. In count I of its complaint, plaintiff expressly refused to admit any liability in the Sawczuk suit. At oral argument in this court, plaintiff conceded that a verdict of "no liability" in the Sawczuk suit would allow the circuit court to return the money to plaintiff.

Thus, although plaintiff has delivered a check to the court, it has merely *deposited* the money there; it has not "paid" anything yet. Like the conditional remittances in *Rosenman* and *Malachinski*, plaintiff's delivery of the $40,000 was merely an interim arrangement to cover whatever liability plaintiff *might* incur in the future. The arrangement here is even further from a "payment" than those in *Rosenman* and *Malachinski* because in each of those cases the would-be obligor actually remitted money to the would-be obligee. Here, plaintiff did not deliver the check to anyone who might be owed it but to the circuit court, an intermediary.

We believe that our holding accords not only with a reasonable reading of the policy language but also with the reasonable expectations of policyholders. When an ordinary citizen, likely unversed in the niceties of insurance law, purchases an insurance policy, he expects to receive indemnification for damages owed and also a defense of any suit brought against him. A typical policyholder would normally expect to be defended until the claims against him have been resolved. *Continental Insurance Co. v. Burr*, 706 A.2d 499, 500 (Del. 1998). Under plaintiff's interpretation of the insurance contract in a situa-

tion like the one before this court, a policyholder, who may have already paid a substantial amount of money in the form of policy premiums, is placed in the position of having to pay more of his own money to defend a tort claim. If he wins, he has not only obviated the obligation to pay the damages he relied on his insurance company to pay when he purchased the policy, but he has also, over and above his policy premiums, spent his own money to endow his insurance company with a right to a refund of its interpleaded funds. In the absence of policy language that clearly compels it, policyholders are entitled to something more than this.

*Zurich* and *Novak*, on which plaintiff principally relies, are distinguishable. In *Zurich*, the policies at issue provided that the insurer's duty to defend ended when the applicable liability limit had been "exhausted by payment of judgments or settlements." The court held that the insurer did not need to defend suits that were already under way before the policy limit was "exhausted." However, the *Zurich* court never suggested that a mere conditional tender of the policy limit to the circuit court would "exhaust" the policy limit. The court could hardly have done so because the policies conditioned the insurer's right to withdraw on the existence of judgments or settlements. That is not the case here, where the issue is whether the insurer "paid" the liability limit by remitting it conditionally to the circuit court via interpleader. The policy language on which this appeal turns was simply not involved in *Zurich*, and that case does not dictate how to interpret the language in this case.

*Novak* did involve the same policy language that is at issue here. However, in *Novak*, unlike here, the insurer that sought to withdraw from defending its insured *had already paid the entire policy limit*, and a partial settlement in the tort suit had released the insured to the extent of the policy limit only. See *Novak*, 183 Wis. 2d at 135, 139, 515 N.W.2d at 505, 507. Thus, under *any reasonable definition of the* term, the insurer had "paid" the policy limit by unconditionally surrendering it to a party with a rightful claim to it.

We hold that plaintiff has not "paid" its policy limit merely by remitting the sum to the circuit court by interpleader without surrendering any claim to the funds or delivering them to a party who is legally entitled to them. Therefore, we affirm the denial of a declaratory judgment for plaintiff on count II of its complaint.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN and CALLUM, JJ., concur.