NO. 4-03-0965

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CHERYL ENGSTROM,

Plaintiff-Appellant,

v.

PROVENA HOSPITALS, an Illinois Not-For-Profit Corporation, d/b/a PROVENA COVENANT MEDICAL CENTER,

Defendant-Appellee.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Champaign County

No. 03L53

Honorable

Heidi Ladd,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In February 2003, plaintiff, Cheryl Engstrom, filed a complaint against defendant, Provena Hospitals, an Illinois not-for-profit corporation, d/b/a Provena Covenant Medical Center, seeking damages for retaliatory discharge.  In April 2003, Provena filed a motion to dismiss Engstrom's complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2002)), arguing that she had failed to state a claim that her termination violated public policy.  Following an October 2003 hearing, the trial court granted Provena's motion and dismissed Engstrom's complaint with prejudice.  

Engstrom appeals, arguing that the trial court erred by granting Provena's motion to dismiss.  We disagree and affirm.   

I. BACKGROUND

In February 1990, Engstrom began working for Provena.  During her employment, she held various positions, including emergency-room registration clerk.  On October 25, 2001, Engstrom reported to Provena's director of emergency services that (1) emergency-room staff were permitting an individual, diagnosed with human immunodeficiency virus (HIV) to loiter in and around the emergency room and (2) triage nurses were providing incorrect triage times on medical records when patients were admitted to the emergency room.  On November 6, 2001, Engstrom was suspended from her position, and on November 16, 2001, her employment with Provena was terminated. 

In February 2003, Engstrom filed a complaint against Provena, seeking damages for retaliatory discharge.  Specifically, Engstrom alleged that (1) Provena had intentionally discharged her in retaliation for her October 25, 2001, reports to Provena's director of emergency services; (2) her reports were "in furtherance of the public policy of the State of Illinois to provide for the safety and care of patients"; and (3) the discharge violated public policy.  

In April 2003, Provena filed a section 2-615 motion to dismiss Engstrom's complaint, arguing that the complaint failed to state a claim that her termination violated a public policy.  In September 2003, Engstrom filed a memorandum in response to Provena's motion to dismiss, in which she argued that her complaint alleged that her discharge violated a clearly mandated public policy.  Specifically, Engstrom argued that her complaint alleged sufficient facts to establish that her discharge violated public policy set forth in (1) the Hospital Licensing Act (Licensing Act) (210 ILCS 85/1 through 16 (West 2002)) and (2) the hospital licensing regulations of the Illinois Administrative Code (Administrative Code) (77 Ill. Adm. Code pt. 250 (Conway Greene CD-ROM April 2001)).  Following an October 2003 hearing, the trial court granted Provena's motion to dismiss and dismissed Engstrom's complaint with prejudice.    

This appeal followed.

II. ANALYSIS

A. Engstrom's Claim That the Trial Court Erred

by Dismissing Her Complaint

Engstrom argues that the trial court erred by dismissing her complaint with prejudice because she stated a claim for retaliatory discharge.  Specifically, she contends that her complaint sufficiently alleged that her termination for reporting (1) the presence of a nonemployee HIV-positive individual in the emergency room and (2) that emergency-room triage nurses had recorded incorrect triage times violated a clearly mandated public policy.  We disagree.

A section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2002)) attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint.  
Vitro v. Mihelcic
, 209 Ill. 2d 76, 81, 806 N.E.2d 632, 634 (2004); 
Armstrong v. Snyder
, 336 Ill. App. 3d 567, 568, 783 N.E.2d 1101, 1103 (2003).  When ruling on a section 2-615 motion, a court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn therefrom.  
Vitro
, 209 Ill. 2d at 81, 806 N.E.2d at 634; 
Armstrong
, 336 Ill. App. 3d at 569, 783 N.E.2d at 1103.  Our supreme court has determined the critical inquiry regarding a section 2-615 motion to be "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted."  
Vitro
, 209 Ill. 2d at 81, 806 N.E.2d at 634.  We review 
de
 
novo
 an order granting a section 2-615 motion to dismiss
.  
Vitro
, 209 Ill. 2d at 81, 806 N.E.2d at 634; 
Armstrong
, 336 Ill. App. 3d at 569, 783 N.E.2d at 1103. 

"The tort of retaliatory discharge is a limited and narrow exception to the general rule that an at-will employee is terminable at any time for any or no cause."  
Geary v. Telular Corp.
, 341 Ill. App. 3d 694, 700, 793 N.E.2d 128, 133 (2003); 
Palmateer v. International Harvester Co.
, 85 Ill. 2d 124, 128, 421 N.E.2d 876, 878 (1981)
.  Our supreme court has emphasized the goal of restricting the tort of retaliatory discharge.  See 
Fisher v. Lexington Health Care, Inc.
, 188 Ill. 2d 455, 467, 722 N.E.2d 1115, 1121 (1999) ("this court has consistently sought to restrict the common[-]law tort of retaliatory discharge").  To establish a cause of action for retaliatory discharge, a claimant must show the following: (1) claimant was discharged in retaliation for claimant's activities and (2) the discharge violated a clearly mandated public policy.  
Jacobson v. Knepper & Moga, P.C.
, 185 Ill. 2d 372, 376, 706 N.E.2d 491, 493 (1998); 
Chicago Commons Ass'n v. Hancock
, 346 Ill. App. 3d 326, 328, 804 N.E.2d 703, 705 (2004)
.  The supreme court's test for determining if a complaint states a valid cause of action for retaliatory discharge is "whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge."  
Barr v. Kelso-Burnett Co.
, 106 Ill. 2d 520, 527, 478 N.E.2d 1354, 1357 (1985)
.

1. 
Engstrom's
 
Report
 
Regarding
 
the
 
HIV
-
Positive

Individual
 
in
 
the
 
Emergency
 
Room

Engstrom first contends that her complaint sufficiently alleged that her termination for reporting the presence of an HIV-positive individual in the emergency room violated a public policy in Illinois that "patients at hospitals have a right to privacy and confidentiality."  Specifically, she asserts that this public policy is set forth in (1) the Medical Patient Rights Act (Patient Rights Act) (410 ILCS 50/0.01 through 99 (West 2002)), (2) the Licensing Act (210 ILCS 85/1 through 16 (West 2002)), and (3) certain hospital licensing requirements of the Administrative Code (77 Ill. Adm. Code pt. 250 (Conway Greene CD-ROM April 2001)).

Initially, we note that Engstrom cites the Patient Rights Act (410 ILCS 50/0.01 through 99 (West 2002)) for the first time in her brief to this court.  She did not cite the Patient Rights Act in either her complaint or response to Provena's motion to dismiss.  Accordingly, Engstrom has forfeited any argument on appeal regarding that act, and we will not address her argument further.  See 
American Standard Insurance Co. v. Basbagill
, 333 Ill. App. 3d 11, 15, 775 N.E.2d 255, 259 (2002) ("[a] party must recover, if at all, according to the case he has made for himself by his pleadings"); see also 
Groark v. Thorleif Larsen & Son, Inc.
, 231 Ill. App. 3d 61, 67, 596 N.E.2d 78, 82 (1992) (providing that "[f]ailure to propose a particular theory before the circuit court and then to advance it before the appellate court is unfair to the other party, who had no opportunity to present pertinent rebuttal evidence on such theory which could have had a bearing on the disposition of the case"). 

Engstrom also relies on sections 6.14b and 6.17 of the Licensing Act (210 ILCS 85/6.14b, 6.17 (West 2002)), as well as certain hospital licensing regulations (77 Ill. Adm. Code §250.250 (Conway Greene CD-ROM April 2001)), as support for her claim that a public policy of protecting patient confidentiality was violated when Provena terminated her employment for reporting the presence of an HIV-positive individual in and around the emergency room.  Section 6.14b of the Licensing Act provides that confidential patient records should not be available for public inspection in a way that identifies patients (210 ILCS 85/6.14b (West 2002)).  Section 6.17 of the Licensing Act provides, in pertinent part, that patient information should be protected from inappropriate disclosure (210 ILCS 85/6.17(a), (d) (West 2002)).  Section 250.250 of Title 77 of the Administrative Code sets forth certain hospital visitation rules (77 Ill. Adm. Code §250.250 (Conway Greene CD-ROM April 2001)).

The trial court, when addressing this issue at the October 2002 hearing on Provena's motion to dismiss, stated, in pertinent part, as follows: 

"It would be a leap to suggest the concern [regarding an HIV-positive individual in and around the emergency room] somehow creates an inference that public records will be disseminated simply because there is an individual identified as HIV positive in the [emergency room] without authority to be there, but there is nothing in the complaint or any of the facts alleged that comes close to rising to the level of invoking the public policy[,] and I believe that portion of the complaint should be stricken with prejudice."

We agree with the trial court.  Engstrom’s attempt to characterize her reporting of the presence of an HIV-positive individual in and around the emergency room as furthering the public policy of protecting patient confidentiality is an inferential leap.  Indeed, Engstrom did not allege in her complaint that patient confidentiality was a concern when she made her October 25, 2001, report.  In addition, she failed to allege (or point out in her brief to this court, for that matter) (1) how her report was related to patient confidentiality or (2) any instances in which patient confidentiality was or would be violated by the presence of the particular HIV-positive individual in the emergency room.  We thus conclude that the court did not err by dismissing this portion of Engstrom's complaint for failing to allege a violation of a clearly mandated public policy.         

2. 
Engstrom's
 
Report
 
Regarding
 
the
 
Recording
 
of

 
Incorrect
 
Triage
 
Times
 
on
 
Patient
 
Records

Last, Engstrom contends that her complaint sufficiently alleged that her termination for reporting that emergency-room triage nurses had recorded incorrect triage times on patient's medical records violated a public policy in Illinois that hospital employees keep accurate medical records.  Specifically, she asserts that this public policy is set forth in (1) section 6.17(a) of the Licensing Act, which provides that hospitals must develop medical records for all patients (210 ILCS 85/6.17(a) (West 2002)), and (2) certain portions of part 250 of Title 77 of the Administrative Code, which provide that (a) accurate medical records shall be maintained on all patients and (b) the minimum requirements for medical record content are patient identification and admission information (77 Ill. Adm. Code §§250.720, 250.980, 250.1510 (Conway Greene CD-ROM April 2001)).  We disagree.

The trial court, when addressing this issue at the hearing on the motion to dismiss, stated, in pertinent part, as follows:

"With regard to the suggestion that [Engstrom] reported incorrect triage times, it's not clear what that means, or the significance or the magnitude of those errors being complained of, but there is simply no suggestion or allegation in the facts alleged as the basis that there was any impact on the care of the patients, that it rose to the level of falsifying or deliberat[ely] affecting the care or treatment of the patients.  

*** 

Administrative allegations that [Engstrom] indicates were violated[] do not rise to the level of showing the existence of a clearly mandated public policy.  With regard to that, there is certainly nothing that affects the rights or the citizens of the State of Illinois collectively, and under the facts alleged in the complaint, there's no public policy that has either been articulated or affected by the allegations raised."

We agree with the trial court.  Engstrom's complaint failed to allege how Provena's discharge of her for reporting the failure to report correct triage times violated a clearly mandated public policy of Illinois.  Although Engstrom alleged that emergency-room triage nurses reported incorrect triage times in patient medical records, she did not allege how such reporting of incorrect triage times violated Illinois public policy or even compromised Provena's patients' health.

Further, we agree with Provena that the portions of the Licensing Act and the Administrative Code on which Engstrom relies do not even mention triage times as an element that must be included in patient's medical records.  None of the sections on which Engstrom relies articulates a clear public policy of the State of Illinois.  We thus conclude that the trial court did not err by dismissing this portion of Engstrom's complaint for failing to allege the violation of a clearly mandated public policy.    

III.  CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

MYERSCOUGH, J., dissents.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent and would reverse the trial court.

Section 250.250 of the Title 77 of Administrative Code states in pertinent part, as follows:

"(c) No visitor shall knowingly be admitted who has a known infectious disease, who has recently recovered from such a disease, or who has recently had contact with such a disease."  77 Ill. Adm. Code §
250.250(c) (Conway Greene CD-ROM April 2001)

In the instant case, plaintiff alleged in her complaint that defendant had intentionally discharged her in retaliation for her reporting the emergency-room staff who permitted an individual who was infected with HIV to loiter in and around the emergency room.  Plaintiff then listed several statutes and regulations, including Title 77, section 250.250, of the Administrative Code, to support her claim that such a discharge violates clearly mandated public policy.  Because allowing an HIV-positive patient to loiter in and around the emergency room clearly violates the above regulation, plaintiff pleaded a cause of action for retaliatory discharge.  

I further disagree with the trial court’s conclusion that the recording of incorrect triage time does not have "any impact on the care of patients" and defendant’s discharge of plaintiff based on her reporting of the incorrect patients’ records affects "no public policy."  

In her complaint, plaintiff stated several public policies that were implicated by the alleged retaliatory discharge: (1) section 6.17(a) of the Licensing Act, which provides that hospitals must develop medical records for all patients (210 ILCS 85/6.17(a) (West 2002)) and (2) certain portions of part 250 of Title 77 of the Administrative Code, which provide that (a) accurate medical records shall be maintained on all patients and (b) the minimum requirements for medical record content are patient identification and admission information (77 Ill. Adm. Code §§250.720, 250.980, 250.1510 
(Conway Greene CD-ROM April 2001)
).  The majority is correct in pointing out the above provisions do not specifically include triage time as an element that must be included in patients’ medical records.   However, hospital staffs’ recording of erroneous triage times certainly violates the requirement of Title 77, part 250, of Administrative Code that appropriate and accurate medical record should be established for all patients.  Further, such erroneous recording certainly has impact on the care of patients.  Defendant’s alleged retaliatory discharge of plaintiff based on such reporting, therefore, violates a clearly mandated public policy. 

For the above reasons, the trial court erred in dismissing plaintiff’s complaint, and I would reverse.